UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Denise Walsh, <br><br> Plaintiff, <br><br> v. <br><br> Resurgent Capital Services, LP, <br><br> Defendant. | Case No. <br><br><br> **COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE OHIO CONSUMER SALES PRACTICES ACT AND OTHER EQUITABLE RELIEF** <br><br> **JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Denise Walsh ("Denise"), is a natural person who resided in Lakewood, Ohio, at all times relevant to this action and is judgment proof under Ohio law.

2. Defendant, Resurgent Capital Services, LP ("RCS"), is a Delaware limited partnership that maintained its principal place of business in Greenville, South Carolina, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

4. Pursuant to 28 U.S.C. §1367(a), the Court also has Supplemental Jurisdiction over Plaintiff's claims under the Ohio Consumer Sales Practices Act, Ohio Rev. Code §

1

1345.01 et seq. ("OCSPA") because they share a common nucleus of operative fact with Plaintiff's claims under the FDCPA.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## ARTICLE III STANDING

6. Article III standing is a fundamental requirement in federal court, and it is essential to demonstrate that Plaintiff, Denise Walsh, meets the standing criteria. The three elements of Article III standing are:

   a. **Concrete and Particularized Injury-In-Fact:** Denise has suffered concrete harm as a result of RCS's actions, as detailed in paragraph 18 of this complaint. This includes invasion of privacy, emotional distress, increased risk of personal injury, increased usage of her telephone services, loss of cellular phone capacity, diminished cellular phone functionality, decreased battery life on her cellular phone, and diminished space for data storage on her cellular phone. These injuries are specific to her and directly related to RCS's alleged violations of the FDCPA and OCSPA.

   b. **Causal Connection:** The injuries suffered by Denise are causally connected to RCS's actions. RCS's repeated and inaccurate communication with Denise, its failure to halt the pre-litigation timer as required by the FDCPA, and its reference to a "pre-litigation department" are all alleged actions that directly contributed to the harm Denise experienced. Her injuries are a direct result of RCS's conduct in violation of the FDCPA and OCSPA.

   c. **Likely Redress:** A favorable decision from this Court is likely to redress the injuries suffered by Denise. If the Court finds in favor of Denise and holds RCS

liable for its violations of the FDCPA and OCSPA, it can award appropriate remedies, including actual damages, statutory damages, treble damages, and attorney's fees, which would provide redress for the harm she has endured.

### STATEMENT OF FACTS

7. At all times relevant to this action, RCS collected consumer debts.

8. RCS regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

9. The principal source of RCS's revenue is debt collection.

10. RCS meets the definition of a "supplier" as defined by Ohio Rev. Code § 1345.01(C). *See Midland Funding L.L.C.. V. Brent, 644 F.Supp2d 961, 976 (N.D. Ohio 2009)(citing cases)*.

11. As described, *infra*, RCS contacted Denise to collect a debt that was incurred primarily for personal, family, or household purposes.

12. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

13. Denise is a "consumer" as defined by 15 U.S.C. § 1692a(3).

14. On or around July 13, 2023, Denise received a letter from RCS regarding a debt ("G Notice"). *See* Exhibit A.

15. The G notice invited Denise to enforce her federally protected debt collection rights by disputing the debt, demanding validation, and/or obtaining information about the original creditor.

16. Shortly thereafter, RCS sent Denise a second letter ("Litigation Letter") informing denise that RCS had placed the account in a "Six Month Accelerated Prelegal Collections Track". *See* Exhibit B.

17. Denise interpreted the Litigation Letter to mean that the debt was transferred to a prelegal litigation department and, if not paid, Denise would be sued, or a determination would be promptly made to sue, in six months.

18. The Litigation Letter also confused Denise as it indicated that if Denise didn't settle the debt *before* the end of the prelegal track it may be forwarded to an attorney. Specifically, the letter seemed to indicate that, to prevent litigation, Denise now had to resolve the debt before the six month designated time frame

19. Shortly thereafter, Denise, responded to the G notice on August 17, 2023, requesting validation of the alleged debt and demanding information on the original creditor.

20. Weeks later, on September 5, 2023, RCS notified Denise that it had concluded its investigation. Rather than providing Denise with the information she requested, RCS indicated, oddly, that RCS was "unable to validate [Denise's] Claim. *See* Exhibit C.

21. Betweeen the time RCS received the validation request and between the time RCS responded to it, RCS failed to pause the timer on the expedited track as required by the FDCPA and instead continued to communicate with Denise, providing inconsistent and confusing information regarding the debt collection timeline. Representatives of RCS repeatedly and inaccurately informed Denise about the duration and calculation of the prelegal track period, in violation of the FDCPA.

22. Because of RCS' letters and threats, Denise paid money out of pocket for an online debt education course to better understand her federal and state collection rights.

23. After her training, Denise contends the accellerated prelegal track is either nonexistent or formed in practice mainly for pruposes of using severe verbiage, for faux escalation and for impermissible leverage.

24. Based on the dates RCS provided to Denise, if accurate, RCS did not pause the timer of the placement of the file in the expedited prelegal track thus, speeding up the time in which Denise would be sued or that RCS would lawfully disclose the debt to a third party consistent with § 15 U.S.C 1692c.

25. RCS has still failed to comply with Denise's request to receive information about the original creditor.

26. RCS's policies and procedures regaring its use, maintance, threats and timeilnes concerning its "escalated prelegal track" causes the needless harassment of undeserving consumers like Deinse.

27. RCS's policies and procedures is to send a letter similar to the G Notice but not, in every single case as alleged in the letter, refer the account to an attorney.

28. RCS's policies and procedures regaring its use of its "prelegal track" threats prior to engaging in research to determine whether Ohio consumers it directs the threats to are judgment proof or determining if, in fact, the account will be referred to an attorney if not paid, causes the needless harassment of judgment proof consumers like Deinse.

29. RCS's policies and procedures violate the FDCPA.

30. Denise has suffered concrete harm as a result of RCS's actions, including but not limited to, invasion of privacy, aggravation that accompanies baseless escalation notices and threats, reduction in the allotted time to respond to RCS's letters to remove her debt from RCS's prelegal track and/or pre legal department, emotional distress, increased risk of personal injury resulting from the distraction caused by the communications, increased usage of her telephone services, loss of cellular phone capacity, diminished cellular phone functionality, decreased battery life on her cellular

phone, and diminished space for data storage on her cellular phone as well as having to pay money out of pocket to gain knowledge to combat RCS's collection tecniques.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

31. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 30 above as if fully set forth herein.

32. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

33. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

34. The likely effect of Defendant's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Plaintiff.

35. Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

36. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 30 as if fully set forth herein.

37. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA. *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)("company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee. If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

38. Defendant's policies and procedures, as described, *supra*, constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

39. Defendant's practice, therefore, violates Section 1692d of the FDCPA, which provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

*See* 15 U.S.C. §1692d.

40. Because Defendant's practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

41. Defendant's policies and practices, themselves, violate the FDCPA.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

42. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 30 above as if fully set forth herein.

43. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

44. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 30 above as if fully set forth herein.

45. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FIVE

### Violation of the Fair Debt Collection Practices Act

46. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 30 above as if fully set forth herein.

47. Defendant violated 15 U.S.C. §1692g by failing to stop its collection efforts and pre-litigation department calculation after Plaintiff demanded validation of the account.

## COUNT SIX

### Violation of the Ohio Consumer Sales Practices Act

48. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 30 above as if fully set forth herein.

49. Defendant's conduct in attempting to collect the alleged debt from Plaintiff constitutes a "consumer transaction" as defined in Ohio Rev. Code § 1345.01(A) because it involves

8

a service that was offered, sold, or otherwise provided to the Plaintiff, a natural person, for purposes that are primarily personal, family, or household.

50. Defendant's misleading representations regarding the status and process of the alleged debt collection, including the false assertion of a "pre-litigation department" and varying dates for potential legal action, constitute deceptive acts or practices as described in Ohio Rev. Code § 1345.02(B), which prohibits a supplier from representing that a service has sponsorship, approval, performance characteristics, benefits, or quantities it does not have or that a supplier has a sponsorship, approval, or affiliation it does not have.

51. Defendant's failure to cease collection activity after Plaintiff disputed the debt and requested validation, as required by 15 U.S.C. § 1692g of the FDCPA, constitutes an unconscionable act or practice under Ohio Rev. Code § 1345.03, which prohibits suppliers from taking advantage of a consumer's illiteracy, lack of knowledge, inability to understand the language of the agreement, and similar factors.

52. Defendant's repeated phone calls and communication with Plaintiff, demonstrate a pattern of conduct amounting to harassment and are therefore unconscionable by the standards established in Ohio Administrative Code 109:4-3-02, which provides examples of unconscionable acts or practices, including causing a probability of confusion or misunderstanding.

53. Defendant knowingly committed the unfair and unconscionable acts and practices described above, as evidenced by the systematic and intentional nature of the communication practices and by Defendant's use of multiple representatives to continue said practices, despite the clear expression of Plaintiff's rights and Defendant's legal obligations.

**JURY DEMAND**

54. Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

55. Plaintiff prays for the following relief:

   a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

   b. Judgment against Defendant under the OCSPA for treble damages, actual damages, non-economic damages, punitive damages and reasonable attorney's fees, witness fees, court costs, and other costs incurred by Plaintiff.

   c. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date:   November 29, 2023

By:   /s/ Jeffrey S. Hyslip
Jeffrey S. Hyslip, Esq.
Hyslip Legal, LLC
207 S. Harrison Street, Suite A
Algonquin, IL 60102
Phone: 614-362-3322
Email: jeffrey@hysliplegal.com
Ohio Bar No. 0079315

*Attorney for Plaintiff*